The J. Chas. McCullough Seed Company v. Commissioner.
The J. Chas. McCullough v. Commissioner
Docket No. 11862.
United States Tax Court
1947 Tax Ct. Memo LEXIS 32; 6 T.C.M. (CCH) 1219; T.C.M. (RIA) 47310; November 19, 1947
*32 Petitioner is a corporation owning and operating an old and established farm and garden seed business and in the fiscal years ending June 30, 1942 and 1943 had large volumes of sales and substantial net profits. Its gross sales in each of the taxable years were considerably more than $2,000,000. In the fiscal year 1942, it paid its three executive officers, who were responsible for the operation of its business, salaries which totaled for the three $36,955.70, of which the Commissioner has disallowed $13,000 as unreasonable. For the fiscal year 1943, taxpayer paid its same three executive officers salaries which totaled $42,981.90, of which the Commissioner has disallowed $13,000 as unreasonable. Held, the salaries paid by petitioner to each of these three executive officers in each of the taxable years were reasonable compensation for services actually performed for petitioner and the determination of the Commissioner is reversed. William R. Seaman, Esq., Harold J. Siebenthaler, Esq., 2301 Union Central Bldg., Cincinnati, Ohio, and Fred G. Fielman, C.P.A., Chamber of Commerce Bldg., Cincinnati, Ohio, for the petitioner. A. J. Friedman, Esq., for the respondent. BLACK Memorandum Findings of Fact and Opinion This proceeding involves deficiencies in taxes determined by the respondent as follows: Year Ended
Nature of Tax
Deficiency
June 30, 1942
Income Tax
$4,198.65
June 30, 1943
Income Tax
2,955.26
June 30, 1942
Declared Value Excess-Profits Tax
882.67
June 30, 1943
Declared Value Excess-Profits Tax
1,684.48
June 30, 1943
Excess Profits Tax
2,987.76
The deficiencies for 1942 are due to two adjustments made by the Commissioner to the net income reported by petitioner *34 on its returns. These adjustments were as follows: Unallowable deductions and addi-
tional income
(a) Capital stock tax
$ 373.75
(b) Excessive compensation to
officers
13,000.00
Adjustment (b) is explained in the deficiency notice as follows: "(b) It is held that the deduction claimed in your Federal income tax returns for the taxable year ended June 30, 1942, for compensation of officers, exceeds a reasonable allowance for compensation for services actually rendered within the meaning of section 23(a) of the Internal Revenue Code, as amended, as follows: Officer
Amount Deducted
Amount Allowed
Amount Disallowed
H. T. McCullough
$17,937.00
$8,937.00
$9,000.00
John A. Schrenker
9,576.75
7,576.75
2,000.00
Roy L. Ward
9,440.75
7,440.75
2,000.00
The deficiencies for 1943 are due to two adjustments made by the Commissioner in the net income as reported by petitioner in its return. These adjustments are as follows: Additions: (a) Capital stock tax
$ 373.75
(b) Excessive compensation to
officers
13,000.00
Adjustment (b) is explained in the deficiency notice in the same manner as explained *35 above for the fiscal year 1942. Other adjustments than the above were made in petitioner's favor which are not contested and are therefore not in issue. Petitioner contests the correctness of the Commissioner's action in both years as to the disallowance of salaries covered by adjustment (b). Petitioner requests a redetermination of the deficiencies on this ground. Petitioner also claims certain overpayments in its declared value excess profits tax and its excess profits tax which result from the adjustments made in its favor and which are not contested. The facts were established by stipulation of facts, documentary evidence and oral testimony of witnesses. Findings of Fact The facts which were stipulated are found as stipulated and are incorporated herein by reference. The petitioner is a corporation duly organized and existing under the laws of the State of Ohio, with its principal place of business in Cincinnati, Ohio, and was organized in July 1913 as successor to the business which had previously been conducted by J. Chas. McCullough, now deceased, as a sole proprietor from about 1886 until the date of incorporation. In 1939, the petitioner purchased the assets and *36 good will of The J. M. McCullough Sons Company, a competing business which had been in existence in Cincinnati since 1838. In 1942, the petitioner in order to assure a supply of garden seeds organized The Kimberly Seed Co. which produces seeds for the petitioner in the Snake River Valley of Idaho. The petitioner's business consists of buying farm and garden seeds of all varieties, processing and refining them by removing chaff, weed seed, dirt and other inert matter and grading them for uniformity, and also selling the refined seeds both at retail and wholesale. Petitioner owns and operates its own seed processing plant which is located in Cincinnati, Ohio. This building is 308 feet long by an average depth of 92 feet, is of reinforced concrete construction, has three floors and a basement over its entire area and eight floors in the center section which is 100 X 92 feet in size, and has a floor area of 143,000 square feet. The essential equipment in this plant consists of more than 200 different mechanical devices which are manned by trained personnel. After seeds are properly cleaned and bulked for uniform quality in this plant, they are tested and analyzed in the seed testing *37 laboratory to see that the finished product conforms to the various requirements of Federal and state seed laws. The total number of employees hired by the petitioner in the taxable years was approximately 90 persons. Petitioner also leases a building on East Fourth Street in Cincinnati, on the first or street floor of which the petitioner operates a retail store. The four upper floors and basement of this building are used for storage and packaging purposes. The sales in this retail store were $170,000 in the fiscal year ended June 30, 1942 and $216,000 in the fiscal year ended June 30, 1943. The petitioner also holds exclusive territorial agencies for the sale of branded agricultural seed disinfectant, seed inoculator, commercial fertilizers and agricultural supplies and does an extensive business in large cotton bags for packaging seeds. It holds the exclusive agency for and markets the entire output of large cotton bags made by the Dana Warp Mills of Westbrook, Maine. This business petitioner carries on under the trade name of The Cincinnati Bag Company and sales of bags not used by it for packaging its own seeds were $197,000 in the fiscal year ended June 30, 1943, and $215,000 *38 in the fiscal year ended June 30, 1942. Petitioner's three executive officers during the taxable years were H. Trimble McCullough, president and general manager; J. A. Schrenker, vice-president and treasurer and R. L. Ward, vice-president and manager of the garden seed department and supervisor of the retail store. These three officers constituted the executive committee of petitioner's board of directors. During the fiscal years 1940 to 1943, inclusive, the petitioner paid its three executive officers total compensation which was duly and legally fixed in advance by the executive committee of the board of directors, as follows: 1943
1942
1941
1940
H. T. McCullough, Pres.
$20,086.80
$17,937.00
$ 7,787.00
$ 6,760.00
J. A. Schrenker, Vice-Pres.
11,556.05
9,576.75
6,220.00
5,200.00
R. L. Ward, Vice-Pres.
11,339.05
9,440.75
6,011.00
4,784.00
Total
$42,981.90
$36,954.50
$20,018.00
$16,744.00
Figures pertinent to petitioner's business and its operations for the fiscal years 1940 to 1943, inclusive, are as follows: Gross
Other
Assets
Net Worth
Surplus
Sales
Receipts
1943
$1,239,577.12
$970,510.15
$171,960.15
$2,754,062.66
$ 8,411.93
1942
1,129,509.03
918,718.39
120,168.39
2,232,015.95
13,173.41
1941
1,032,441.07
867,094.64
68,194.64
1,635,787.40
10,996.45
1940
1,016,179.60
836,807.48
37,907.48
1,479,008.64
12,146.24
*39 Net
Income
before
Total Sales
Federal
Officers'
Federal
and Receipts
Taxes
Compensation
Taxes
1943
$2,762,474.59
$ 102,050.05
$ 42,981.90
$ 163,127.36
1942
2,245,189.36
40,819.88
36,955.75
115,465.79
1941
1,646,783.85
12,102.10
20,018.00
51,567.20
1940
1,491,154.88
664.18
16,744.00
4,732.58
The following dividends were paid upon the first preferred stock and the second preferred stock: June 30,
June 30,
June 30,
June 30,
June 30,
1939
1940
1941
1942
1943
First Pref. Stock
$ 4,500.00
$ 9,000.00
$ 9,000.00
$22,500.00
$ 9,000.00
Second Pref. Stock
10,447.50
20,895.00
$14,947.50
$29,895.00
$ 9,000.00
$22,500.00
$ 9,000.00 The following amounts represent arrears in cumulative preferred dividends on a six per cent preferred stock and seven per cent preferred stock at the end of the fiscal years above listed and amounting to: June 30,
June 30,
June 30,
June 30,
June 30,
1939
1940
1941
1942
1943
$44,842.50
$44,842.50
$65,737.50
$72,887.50
$93,712.50 No dividends on the common stock were paid from June 30, 1939 through *40 June 30, 1943. H. Trimble McCullough is and has been since 1927 the president and a director of petitioner, as well as chairman of the board of directors and chairman of the executive committee of the board of directors. He has been continuously connected with the seed business since 1901 and prior to that spent three summers working in the seed business of his father and one on the Braslan Seed Company farm at Coyote, California. After graduation from the Ohio Military Institute in 1901, he spent four years in the seed business of his father, J. Chas. McCullough, during which time he worked in the office, in the plant and on the road, buying and selling seeds throughout Ohio, Indiana, Kentucky, West Virginia, New York and Pennsylvania. In 1905 he purchased a 500 acre farm in the Lompoc Valley in California and converted it into a vegetable seed producing farm raising seed only. He had entire charge of the farm, including the building of a suitable warehouse and installing seed cleaning equipment. The seeds raised on that farm were shipped to Cincinnati to The J. Chas. McCullough Seed business, which sold them. This operation was continued until 1919, at which time he returned *41 to Cincinnati and began working as assistant to his father, then president of the petitioner. In 1927, after his father's death, he became president of petitioner as well as chairman of the board of directors and of the executive committee of the board of directors. In these capacities he was and is directly responsible, together with the other members of the executive committee, for all decisions as to policy in the petitioner's business. During the taxable years he devoted his full time to the business, working long hours and often after the close of the regular business day. In addition to his other duties, he personally arranged for the company's very substantial credit line with the First National Bank of Cincinnati. Roy L. Ward is and was during the taxable years employed by the petitioner as vice-president, manager of the garden seed department, supervisor of the retail store, and a director and member of the executive committee of the board of directors. During this period he had direct charge of the retail store which in addition to selling seeds at retail also sells both at retail and wholesale such items as insecticides, fungicides, fertilizers and other products related *42 to the seed business and lawn or grass seed. In addition to the merchandising of these products, the preparation and distribution of both retail and wholesale catalogues of the various products came under his supervision. He also had direct charge of the wholesale garden seed department operating from the main plant. This included all the problems of buying and arranging for sufficient supplies in advance as well as selling. Vegetable seeds are contracted for in advance and since many of them are biennials these latter must be contracted for at least two years in advance. This requires intensive study of climatic conditions and other factors affecting crops in many sections of this country and in a number of foreign countries so as to be able to anticipate supply and demand. In 1934 the wholesale garden seed department was moved from the retail store to the main plant, but Ward continued to exercise supervisory control over the activities at the retail store as well as the wholesale garden seed department. His duties were materially increased in 1939 when petitioner acquired the J. M. McCullough Sons Company, and again in 1942 when it set up The Kimberly Seed Co., at Kimberly, Idaho, *43 and also in 1942 by the increased production required by the war. John A. Schrenker is and was, during the taxable years, employed by petitioner as vice-president, treasurer, director and a member of the executive committee of the board of directors. During that period he was the manager of the main plant, and particularly was in charge of the seed cleaning department and the buying of seeds other than vegetable seeds. He also trained the salesmen-buyers and the seed testing and analysis were under his supervision. He is 69 years old and has been employed by the petitioner since 1891. He started with petitioner as an office boy and then handled city collections and later was a retail salesman. Thereafter he worked in the shipping department and also as a salesman-buyer, finally assuming his present position as general superintendent of the seed cleaning plant. He is responsible, together with H. Trimble McCullough, for much of the design of petitioner's present plant and much of its seed processing machinery. The petitioner has insufficient working capital to finance its annual purchases of seed crops during the buying season. To finance these purchases, it has for many years established *44 an annual open line of credit with the First National Bank of Cincinnati and borrowed heavily. These annual borrowings have regularly been repaid prior to the end of petitioner's fiscal year on June 30th. For the buying season beginning in July 1941 (the fiscal year 1942) petitioner established a line of credit of $600,000 with the bank and actually borrowed $560,000. This was repaid in full by the end of the fiscal year. In the fiscal year ending on June 30, 1943, the petitioner established a similar line of credit with the bank in the same amount and actually borrowed $600,000. This amount was also repaid in full by the end of the fiscal year. These loans were arranged on behalf of petitioner by its president, H. Trimble McCullough. These loans were unsecured and were made by the First National Bank of Cincinnati, after consideration of independent audit reports, relying upon prior history of petitioner's loans and because of its faith in the integrity of petitioner's management. In making these loans, the bank considered the compensation paid by petitioner to its officers but thought it was low rather than high. During the taxable years 1942 and 1943, the officers, McCullough, *45 Schrenker and Ward, carried substantially greater responsibilities, made greater efforts, and worked longer hours than in prior years. The increase in gross sales, the absorbing of the business of the competitor, The J. M. McCullough Sons Company, purchased in 1939, the establishment of The Kimberly Seed Co., a seed growing subsidiary, the addition of a night shift and the difficult conditions of the war years with its shortages of labor, all added to the burden carried by these officers and added to the value of the services which they rendered to petitioner. The compensation which petitioner paid to its officers, H. Trimble Mccullough, John A. Schrenker and Roy L. Ward, in the taxable years 1942 and 1943 was fair and reasonable remuneration for the services actually rendered to petitioner by these officers. Opinion BLACK, Judge: The Commissioner in his determination of the deficiencies made several adjustments to the net income of petitioner as reported on its return for the two fiscal years which are involved in this proceeding. None of these adjustments are in controversy except those involving the disallowance by the Commissioner of certain parts of the salaries claimed *46 by petitioner as deductions on account of compensation paid to its three executive officers, H. Trimble McCullough, president, J. A. Schrenker, vice-president and treasurer and Roy L. Ward, vice-president. The facts with reference to these salary payments are rather fully stated in our findings of fact and we shall endeavor to not unnecessarily repeat them here. Respondent cites several cases in his brief in support of the proposition that the determination of the Commissioner in a case of this kind is prima facie correct and the petitioner is put to proof of the reasonableness of the amounts in dispute. Among the cases which he cites on that point are: Botany Worsted Mills v. United States, 278 U.S. 282; Winter Realty & Construction Co., 2 T.C. 38; Miller Manufacturing Co., Inc. v. Commissioner, 149 Fed. (2d) 421. These cases do hold, as respondent says they do, that in a case of this kind the determination of the Commissioner is presumptively correct. However, the instant case is not one which calls for the application of the doctrine of the presumptive correctness of the Commissioner's determination. Here we have a great deal of evidence, *47 both stipulated, documentary and oral, bearing upon the reasonableness of the salaries involved in this proceeding and in view of this extensive evidence, we think this is a case to be decided upon its facts and not upon the presumptive correctness of the Commissioner's determination. There is no reason to further discuss that well known rule at all. Mertens in his Law of Federal Income Taxation, vol. 4, sec. 25.51 says: "* * * In determining whether the particular salary or compensation payment is reasonable, the situation must be considered as a whole. Ordinarily no single factor is decisive. There are various tests which have been commonly applied in determining the reasonableness of the particular salary of compensation, such as the ratio of the particular salary and the aggregate salaries to gross income, the size of the particular business, the extent and scope of the employees' work, the employees' qualifications and contributions to the business venture, amount of salaries paid to the particular employee in prior years, general economic conditions, prevailing salaries paid to employees performing similar services in a comparable enterprise, the availability of others to *48 fill the office held by the particular employee, and salary policy of the corporation as to all employees. * * *" We have considered the foregoing factors, in so far as covered by the evidence in the record, in arriving at our conclusion of reasonable salaries, which conclusion has been embodied in our findings of fact. Not all of the factors mentioned in the above quotation from Mertens are represented in the evidence which is before us. Indeed, it is rare where we have all of such factors represented by the evidence in any one case. But in the instant case we do have a great deal of evidence, stipulated and oral, bearing upon the reasonableness of the salaries of these three individuals, McCullough, Schrenker and Ward, and it is upon a careful consideration of this evidence that we have made our findings of fact. The petitioner was an old and established business with a large volume of trade and good profits. For example, in the fiscal year 1942 its gross sales were $2,232,015.95 and its net profits before Federal taxes were $115,465.79. It incurred and paid in that year $17,937 salary to its president, H. T. McCullough of which the Commissioner has disallowed $9,000, leaving *49 only as a deduction for salary incurred and paid to McCullough, $8,937, which seems to us a very small salary allowance for the services of the chief executive of a concern doing considerably more than $2,000,000 of business with good, substantial profits to the corporation. Petitioner incurred and paid in the same taxable year to its vice-president and treasurer, John A. Schrenker, $9,576.75 and $9,440.75 to its vice-president and general manager of its retail store, R. L. Ward. The Commissioner in his determination of the deficiencies has disallowed $2,000 of each of these two foregoing salaries. Similar disallowances for the fiscal year ending June 30, 1943, were made by the Commissioner, although in that year petitioner's gross sales were $2,754,062.66 and its net profits before Federal taxes were $163,127.36. In the light of the evidence, we think these disallowances were altogether unjustified. E. Trimble Smith, who is vice-president of the First National Bank of Cincinnati and in charge of its loan department, testified that he was well acquainted with petitioner's president, H. Trimble McCullough, and knew of his business ability and was acquainted with the sort of services *50 that he rendered as the chief executive officer of petitioner and that he considered a salary of $25,000 to McCullough in each of the taxable years would be reasonable. He testified that he was not familiar enough with the services of Schrenker and Ward to the J. Chas. McCullough Seed Co. to justify his giving an opinion as to the reasonableness of the salaries paid to them. Roger J. O'Donnell, who is the executive secretary, treasurer and general counsel of the American Seed Trade Association with headquarters in Chicago, Illinois, testified that in the course of his official duties he became more or less familiar with salaries paid to executive officers by corporations in the seed business, that he was acquainted with McCullough, Schrenker and Ward and knew in a general way of the services which they performed for petitioner and that in his opinion reasonable compensation for the services performed by McCullough as president would be $27,500 to $30,000 annually, for Schrenker as vice-president and treasurer it would be $20,000 annually and for Ward as vice-president and general manager of the retail store it would be $18,000 annually. On the strength of the foregoing testimony, *51 together with evidence of the volume of petitioner's business, its net profits, and the actual work which these men performed for the taxpayer, we think the salaries which petitioner incurred and paid to them in each of the taxable years were reasonable and we have so found as an ultimate fact in our findings of fact. There is no reason to believe, as respondent seems to argue in his brief, that these salaries were paid in each of the taxable years as a cloak for the distribution of dividends. Schrenker and Ward only owned comparatively small amounts of petitioner's common stock. Ward only owned 25 shares and Schrenker only owned 96 shares out of a total of 3,500 shares of common stock outstanding. While McCullough was a large stockholder, the evidence well supports petitioner's contention that the salary in each of the taxable years which was paid to him was paid solely for his services to petitioner and was in no sense intended as a dividend disbursement. Respondent's chief reliance in support of his position seems to be that petitioner had paid these three men salaries in prior years which were considerably smaller than those paid in the two taxable years. While that is true, *52 it is also true that the volume of business and profits in the taxable years were considerably higher than in these prior years and these increases which brought increased work and responsibility seem to well justify the increases in salaries which were paid McCullough, Schrenker and Ward. We, therefore, think the salaries in question were reasonable for the services performed and we have so found. On this issue we sustain petitioner. Decision will be entered under Rule 50.